Good afternoon. Next case on our docket is In Re, the marriage of Abigail Williams v. Jeremy Williams, 524-1260. Are you the appellant? I am. Alright. Come on up. Usually when you switch that way. Well, I wasn't sure. That's okay. Good afternoon. Your client is with you? Pardon me? Your client? Yes. My name is Dave McDevitt of McDevitt, Osteen, Hoinecke, and Daters in Effingham. I represent the respondent-slash-appellant, Jeremy Williams, who is likewise present in court today, along with my associate, Thomas Beely. So if it may please the court and counsel. Yes, sir. We're here today to appeal the order of the Crawford County Circuit Court regarding parenting time with the party's minor children. Just by way of short background, the parties have two minor children, Hudson, who is now 11, and Harper, who is now 8. The issue that was before the court was whether or not the respondent, my client, had violated or not complied with the terms of an allocated parenting claim that had previously been entered by agreement of the parties. Ultimately, the court entered an order pursuant to Section 607.5 of the Illinois Marriage and Dissolution of Marriage Act. I quote part of that statute here because I think there are two points of emphasis. If the court finds, by preponderance of the evidence, that a parent has not complied, then the court, quote, in the child's best interests, shall issue an order that may include one or more of the following. And the pertinent provision here is an imposition of additional terms and conditions consistent with the court's previous allocation of parenting time. And that's exactly what the court did here, found that there had been a lack of compliance with the allocated parenting claim and imposed some additional terms and conditions of which we complain. So the underlying petition that led to this was an allegation that the respondent, my client, had violated the terms of the parenting claim. There was no allegation of serious endangerment to the children, no allegations that related to the use of heavy equipment, tractors, combines, planters, semis, et cetera, only that there had been a lack of compliance because he was working during his parenting time, during planting and harvest season. And that is of particular importance here because it's only during planting and harvest season that this provision applied. After several, two or three days of hearings, I believe, the court ended up making the following findings. The court found, pursuant to 607.5C, that by a preponderance of the evidence, the father had not complied with the terms of the parenting plan as alleged by the mother. Again, no allegations of serious endangerment, no allegations related to the use of heavy equipment. Nevertheless, the court found that there had been a lack of compliance with the parenting plan as alleged by the mother. I also filed a motion for clarification asking the court to clarify how exactly the respondent had failed to comply, and there really was no answer to that. But there were clues as to what the court was thinking in the findings that he made. The pertinent sentence here is, father has been having both children ride with him while he plants for extended periods of time. So it appears that the issue, and the court picked up on this, was it was the amount of time. It was the duration of time in heavy equipment, and having both children at the same time in heavy equipment, that was the issue. I'm going to interrupt you, though, counsel. Sure. I read the underlying transcript. Wasn't part of the issue, though, defining what work was, what harvesting and planting was? Wasn't that part of what the court was trying to determine, to determine if, in fact, your client had violated the terms of that? It's essentially a right of first refusal. Yes. Absolutely, the court was trying to interpret and apply that particular provision. And that provision, you know, what it particularly says, and I think this is important as it relates to time as opposed to activities. The parties that uses paragraph C of the planting and harvest provision of the agreement. Parties acknowledge and agree that during planting and harvest season, father will be working additional and extended hours. The next sentence is during those periods, mother shall provide care for the children while father is working. So the trial court focused on what is working. Well, I would suggest that working can mean almost anything on a farm, particularly during planting and harvest season. But it's the focus on the heavy equipment that I think the court misdirected its focus. Because the issue wasn't what he was doing during the time. It wasn't riding in heavy equipment. It wasn't the son riding in the combine with his father. It was the amount of time. It was the extended hours that was complained of. So, and I'm going to sort of jump ahead a bit.  So in essence, this case comes down to what is an additional term and condition versus what is a restriction? Exactly. Would you agree? Exactly. All right. So any case law that you've found that defines what an additional term and condition is? I have not. Okay. I'm sorry. No, go ahead. Go ahead. Well, I think that's the crux of this case is the interplay between Section 603.1, which is the restrictions, and additional terms and conditions under 607. How do those two play out? And I would suggest that comes down to an issue of statutory construction. And that is, and I quoted it in the brief, that, you know, a well-settled rule of statutory construction is that where there is found in a statute a particular enactment, it is held to be operative as against the general provisions on the subject, either in the same act, or in general laws relating thereto. So what I would suggest is additional terms and conditions, if there's going to be a restriction imposed under the guise of additional terms and conditions, there must be compliance with Section 603.1. Because this is a restriction. Because it restricts Jeremy's right to have his children in heavy equipment. It restricts the decisions he makes, so it affects his parenting responsibilities and decision-making authority, as well as his time. So because there is a particular statute on restrictions, I think that overrides the additional terms and conditions provision that the Court utilized here. Well, let me ask you the flip side of my question. Okay. Is there a case law that defines restrictions? Nothing that really applied to this. Did you find anything close? Only case law that suggested that any adjustment, reduction, or limitation on decision-making could be construed as a restriction. Now, I couldn't really find anything that applied to this particular set of facts, so it was difficult. But what I'm suggesting here, and as I argue in the brief, this is a limitation on his decision-making. It is also a limitation and reduction of his time. And the Court mentioned the right of first refusal. I would suggest that this is not a right of first refusal issue. A right of first refusal, even under the terms of their agreement here, it was an eight-hour trigger to the right of first refusal. I would suggest this is not the same thing because the right of first refusal is when a parent is unavailable. And that's not the issue here. The issue is what activity was Mr. Williams engaged in with the children. He was available. He just wants to take his children on tractors and in semis and in the combine and that kind of thing. So it's not unavailable. It's not that he's unavailable. It's the activity that's now being restricted. So if I were self-employed and I took my children to work with me, would I be violating the right of first refusal? Not necessarily. Okay. Not necessarily. I mean, there could be other arguments made about whether or not, you know, that's appropriate. But it comes down to the definition of work and how additional terms and conditions would apply that would ultimately affect their agreed upon right of first refusal. Does it not? Doesn't this hinge on that? I agree, except that, again, I would suggest that this is not a right of first refusal issue because he's still available. And here it's unique to farming situations. You have me lost on whether he's still available if he's out planting. He is available and consistent with what has happened throughout these children's lives. They ride with it. But the agreement says that during planting and harvesting seasons, they recognize he's going to work the additional hours. And so it seems to me that what you're describing is not what was contemplated by the agreement. I would suggest, Your Honor, respectfully, that the issue was the amount of time. It was the additional and extended hours. So, for instance, if Mr. Williams wanted to take his son in the combine at noon on a Saturday, I would suggest that doesn't. He'd be planting and harvesting? Yes, he could be harvesting corn next week. And if it's otherwise, you know, a day where that's available and the weather's good and he is harvesting, what I'm saying is not permitting him to have his child ride along in the combine with him during harvest season as he's done his entire life is a restriction. And I don't think that's the same thing as a right of first refusal, because if he's not permitted to take the child in the combine during harvest, then he's not going. So he is still... Regardless of the work hours. So, I mean, it could be Saturday and they could be out combining and it's not within an eight-hour scope. Correct. You're saying that this order prohibits him from taking his son in the combine. Yes. The order is very clear. And I think this was inconsistent with what I think the court intended to do, but nevertheless did. What it specifically says is during planting and harvesting seasons, when the father is operating heavy machinery, and then describes them, the children shall be in the care of the mother. There's nothing that allows him under that order to take his children in the combine. Now, there were other concerns. The concerns of the petitioner were she didn't want them riding all day, or she didn't want them late at night to be riding, or she didn't want both children in the combine or a tractor at the same time. But the issue wasn't the use of heavy equipment in and of itself. It was the extended times. It really was just a matter of time. So, and your provision, or your argument is, is that basically there was no hearing on this restriction. Correct. There was no pleadings for restricted parenting time, and there was not a hearing on restriction. Correct? Correct. Wasn't there some testimony of a family member, I think, that was a dentist that sort of came in and said this is dangerous? There was certainly testimony about the normal, inherent dangers of farming. Okay. What there was not were pleadings or findings or evidence of any specific instances that would constitute serious endangerment of these children here. It was never alleged that he presented a dangerous situation, that children were injured or anything along those lines. So I agree, Your Honor, there was no hearing on whether or not under 603.10 there should be restrictions. But nevertheless, the court imposed what we believe to be a restriction. After that testimony, did Judge Hartford make a finding that there was serious endangerment to the child? He did not. Is that part of your argument that to impose? It's one thing to impose additional conditions, and when I look at the statute, those conditions are like post bond, go to counseling, reimburse, some other things.  But additional restrictions limits time or limits decision-making or limits limitation, and before you can have a restriction, there has to be a finding of serious endangerment? Exactly. What about paragraph 9 of that same section that says any other provision that may promote the child's best interest? Isn't that kind of a catch-all? It could be a catch-all. I would suggest here, though, that the evidence shows that prohibiting any involvement in heavy machinery or riding in a combine would be contrary to the best interest of the children. Both parties admitted that the children have always done this and that it is beneficial to them. So there wasn't a finding pursuant to that particular paragraph, nor do I believe there could be, because that prohibition is just a blanket prohibition. If he's operating heavy machinery, children would care of the mother. What that means is this 10-year-old boy cannot ride in the combine during harvest season with his father. I don't believe, and the court didn't believe, I honestly don't know how this happened, but I asked the court during the motion for reconsideration, does the court mean to have this kind of blanket prohibition? He said no. Then that's exactly what was entered, though, because it's very clear. Operating heavy machinery, kids in the care of the mother. So in the absence of any findings, pleadings, or evidence of serious endangerment, there cannot be a restriction. That's our argument. There's a second reason. Even if the court finds that a finding of serious endangerment wasn't necessary, then the application of 607.5 should also prohibit the entry of this order, because under 607.5, additional terms and conditions has another part to it, an imposition of additional terms and conditions consistent with the court's previous allocation of parenting time or other order. If you look at the underlying agreed parenting plan, there is no such restriction. There is no mention of heavy equipment. There is no mention of combines or tractors or semis or anything of that nature. So I would suggest, Your Honors, that that is not consistent with the court's previous allocation of parenting time. Again, I think it goes back to time. What would be an example of a consistent additional term and condition? I think if the court would have said, what are additional extended hours? And what I argued at the trial court level was we're talking about time. We're talking about the duration, not the activity itself necessarily overall as a blanket prohibition, but how much time. Is three hours appropriate? Is four hours appropriate? Is 8 o'clock at night appropriate or midnight? I would understand those additional terms and conditions, but what's happened here is a blanket prohibition, period. I would suggest that is not consistent with the underlying agreed parenting plan. In the absence of any other questions, Your Honors, I would respectfully request that the court reverse the decision of the Crawford County Circuit Court. Do you think Judge Hartrick was frustrated with her client that the kids are with dad during harvesting season? And the order seems to say during at least part of that time mom will have the kids and mom wasn't getting the kids. Was there some testimony that mom was not getting the kids at all during these times? Her allegation was any time he's working during planting and harvest season, the children should be in the care of the mother. That was the allegations. Those were the allegations in the petition. And that was primarily the evidence. So there was an admission that riding the equipment in and of itself wasn't the problem. It was any time he's working, the kids should be with mom. And I don't think that was the spirit of the agreed parenting plan nor consistent with the testimony. They agreed that the kids' involvement was beneficial. The argument was how long both kids in the combine, late at night, So it comes back to the additional and extended hours. I think that is the issue and was the issue. And to answer your Honor's question, there could have been restrictions that were still consistent if it was a matter of time. But this blanket prohibition I think is contrary to both the spirit and the language of the agreement. Go ahead. The agreed order says mother shall provide care for the children while father is working. That seems pretty straightforward to me. I think it's the other provision that triggers that during those periods. And I think those periods. During harvest and planting seasons. Yeah, it says, respectfully your Honor, what it says is he will work additional and extended hours. Period. During those periods. I think the interpretation of that is not any time during planting and harvest season, But during the additional and extended hours. I think that was the intent of the parties. So we have an ambiguity here where parties didn't really flesh out what that means. I agree. It's subject to interpretation. Yeah. So now we're at the point where we have to decide what was meant by the agreed to order. Exactly. But again, my suggestion is because of the sequence of the language, He works additional and extended hours. During those periods. While father is working. And that's consistent with the testimony here too. I understand, but the question for us is if we have to make this determination, Then what section of the statute is going to apply? You want there to be a serious endangerment requirement. Why? I think in order to impose the restriction. You call it a restriction. Yes. I believe it to be a restriction. A modification that explains what the Trout Court believed the parties meant. I didn't mention this argument here, but I did in the brief. It's also not a modification. And there wasn't an allegation. There wasn't a properly pledged 610 petition for modification. So I don't think that really applies. I don't use that term probably inarticulately. I understand. But I go back to whether or not. 67.5 versus. 603.10. Right. 603.10. Right. That's the issue. But Justice Kate's question begs another question. What is our standard of review? I think you said manifest way. But if we're dealing with essentially a contract dispute, right? And an ambiguity of a contract. And what is our standard of review there? Actually, I think, Your Honor, that if I said manifest way. I may have been looking at the wrong brief. Sorry. I think it is abuse of discretion. Okay. In the standard of review, such a finding shall not be overturned. I think it is abuse of discretion. And the reviewing court must analyze whether the court acted arbitrarily without conscientious judgment or in view of all the circumstances exceeded the bounds of reason. And I think here imposing this blanket restriction that has the consequence of the child not being permitted to participate or ride in a combine or a semi with his father exceeds the bounds of reason. Okay. Questions? No. All right. You'll have some time after the Apley's argument. And we'll hear from you again on this issue. Thank you, Your Honor. Apley, I realize that Mr. McDevitt went over a few moments. So if you need a little extra time, we'll allow you that. Thank you, Your Honors. And, Your Honors, may it please the Court, my name is Esther Cha and I'm appearing on behalf of the Apley petitioner, Abigail Williams. And so, Your Honors, I do hope to address three points with you today. First, that the interpretation of the agreed parenting plan by the trial court was not an abuse of discretion. Second, that the court's imposition of sanctions, including adopting an additional term or condition, again was not an abuse of discretion. And third, that the trial court's adoption of its interpretation as an order was not a restriction or a modification of parenting time, but merely a clarification of their existing parenting plan. Just briefly, to address the standard of review, for contract interpretation, this parenting plan was a negotiated agreement in contract between the parties. Generally, the court is tasked with trying to give the effect to the intent of the parties, which is generally a de novo review. However, when there is ambiguity, as there is arguably here, the court must construe the document to give effect to the intention of the parties. And we ascertain that intention by examining the facts and the circumstances surrounding the formation of the agreement. At that point, where there is ambiguity, the trial court must consider evidence of the facts and circumstances surrounding the formation of the agreement, and in which case the trial court is assessing the evidence, including the testimony and credibility of the witnesses. And because we are now in this ambiguity land and looking at the facts and circumstances of the negotiated agreement, then the standard of review is whether there has been abuse of discretion. So I agree with counsel with respect to that. Now, Your Honors, first, the trial court's interpretation of the parenting plan was not an abuse of discretion and supported by the record. This agreed parenting plan was voluntarily entered into by the parties. As the Supreme Court has stated in the remarriage of culture, parties' rights to determine what they're going to do with their children is paramount. And when that's reflected in the parenting plan, then the court must defer to that as long as it's not detrimental to the children. Looking at the parenting plan itself, paragraph 5 addresses parenting time, and parenting time, there are some different sections. So we have a school year schedule. We have a summer schedule. There's a general mutual right of first refusal that's in paragraph 5G. And then this paragraph 5C, which specifically addresses planting and harvest periods. And that planting and harvest period paragraph in paragraph 5C provides additional parenting time for mother during planting and harvest. I think that is beyond dispute. That paragraph would not exist if it was not contemplated that mother would have additional parenting time during those times of the year when father is very busy. Now, paragraph 5C there. Wouldn't an additional term and condition to help clarify that just be time-related? Wouldn't it have been clearer just to say, okay, so after 5 p.m. to 8 p.m., if he's farming, whether it be any type of using any type of equipment or farming can be out in the field or whatever, that during that period of time that she would have that right to pick up the children and then take the children. Wouldn't that have been easier to define? I think that definitely could have been an approach taken by the court. But I think that the court can also define, say, when a right of first refusal occurs or when a right to provide care occurs by the activity. So let's say you have a circumstance, for example, where a parent has, say, a waitress at a local restaurant. She has variable shifts. And the parenting plan simply provides if mom's working at the restaurant and dad is always available, dad shall provide care. This is not any different from that. A little bit. It gets blurrier, though. What if you work from home? How do you define my hours then? Wouldn't time be the best way to define that? I agree, and I think that that is kind of why we're in the situation of defining when work is based on the type of activity. So if, for example, you're a person who works out in the field or at home, a court could certainly say, well, if you're working at home, just working on your computer, doing QuickBooks, what have you, we're not going to apply that. But if you're out in the field, out at the restaurant, out in the office, in court, then perhaps the children should be with the other parent who is available to provide care. So you're arguing that it's location-based. And activity-based. And activity-based. And a lot of the evidence that was presented, it was about the type of activity of father's availability during planting and harvest. So a father would say, I'm available. I'm available. I'm just sitting in this piece of equipment. Well, these pieces of equipment, these combines or tractors, are these large restricted areas where there would be one seat. They have two children, but there would be one seat and no access to a bathroom. And so the idea that I'm available, these children can be with me for hours and hours on end, well, then there's this argument of, well, is that available or is that unavailable? But I think what I'm getting at is, wouldn't an additional term and condition be limiting the amount of time, perhaps? To completely prohibit that type of behavior, is that a restriction? I don't believe that it is a restriction. And so I will first address the restriction language. Again, I think that describing the activity was merely used to define when mother's parenting time would then take place during planting and harvest. But going back, for example, to the analogy with the person that works at a restaurant. By saying, when mom works at restaurant, dad shall provide care. That's not a prohibition that these children can never go to that restaurant. It's just, if mom is working and her attention is divided, then that's when children would be with father because she's on the clock and presumably is beholden to whatever her work task may be and cannot prioritize the needs of the children in that moment. But in your hypothetical, that would be as if the court said, you're not allowed to go to the restaurant, just like you're not allowed to ride in the tractor. But I think a mother would be able to take the children to the restaurant if she's not working. Hey, let's go and stop by and say hi to, you know, my co-workers and let's go get a meal there. There's no prohibition on that or restriction on the children ever going there. It's simply while she is on the clock working and her attention is divided. Then the children should be in care of the other person. And I think it's a very similar consideration because in this case, the children are sitting in a piece of equipment. Again, prolonged periods, and we do have some exhibits that show kind of the space that the children are in. And there's only space for one child, but they have two children. So what's happening with that second child? And that goes back to the facts and circumstances of the case at the time that they entered into the agreed parenting plan. So much testimony was elicited from the parties with respect to that. Now, mother had testified that, and I believe father had agreed, that during their marriage they agreed that mother would change jobs to become a school nurse so that she could be available for the children outside of school hours, which is her current position. So she is available. It was also testified that father, when he did take the children out to the farm, would only ever take one child at a time because he was not able to properly supervise two children at the same time when he was busy in the field. And so based on those facts and circumstances, the court's interpretation of when, when does this opportunity for mom to provide care during planting and harvest, when is that triggered, I believe that is supported by the evidence in the record before the court. Why does the, in paragraph 5C where it throws in 8 p.m., if dad's working past 8 p.m., mom has, why is that time restriction or whatever you want to call it, why is that not sufficient to show when this is triggered and when it's not? Your Honor, I think that that language in the parenting plan actually demonstrates that the parties contemplated that mother would have care potentially from after school until 5 if father is working in the field. And the idea was if he happens to go past that hour, we're going to impose something just so they're not changing where the kids are sleeping so late at night. So I actually think that goes to show it was contemplated that mother would have parenting time up until that time when father was in the field. And so when the parties came up with this parenting plan, they had to negotiate many different pieces, which is kind of discussed at length in the culture case. You know, we can kind of go on and on and on about all the different tradeoffs they made when determining the schedule, but here we are looking at the language of that paragraph 5C. And I think there is this argument. We certainly took the position that during those periods, being planting and harvest, when father is working, mother shall provide care. That was our interpretation, which was a bit broader than where the trial court landed, but not nearly as narrow as father had requested. I will also note that father's interpretation that it would be specifically past a certain hour and also only on certain days of the week, he testified that, oh, I think that this only applies after 5 o'clock p.m. and only on weekdays, not on weekends. Where he got the 5 o'clock p.m., where he got the weekends, I have no idea. It's not in the agreed parenting plan. There's no language like that. This was a novel interpretation that was presented at the contempt hearing. And in fact, in the record he had testified, when asked where did that come from, he said, I believe, my lawyer and I talked about this when this became a problem, and we decided a typical workday was 5 o'clock. So anything after 5 o'clock is additional extended hours. So that was a conversation that happened between them after the contempt proceedings were initiated. That was not the intent of the parties at the time of the agreement. Furthermore, again, looking at the facts and circumstances when they negotiated the agreement, there was a lot of conflict. Excuse me. The interpretation that the mother's right to provide care only applies to additional extended hours requires some baseline of, well, what are your regular hours? If we're going to define this right for a mother to have the children for additional extended hours, then we have to have some definition of, okay, well, what are regular hours? And so he asked father that many times. What are your regular hours? And he was unable to provide an answer. He repeatedly stated, both in discovery depositions and at the hearing, that his hours are highly variable. Sometimes he would leave at 4.30 a.m. Sometimes he'd leave at 7.30 a.m. Sometimes he'd work as late as 10.30 p.m. I read that testimony, but that was based on some of those things that you testified about were about activities for the children and whatnot, and I'm assuming that farmers, like other self-employed folks, work a lot of hours. Sure. Just at their own flexible schedule. Right. Correct? Right. So that feels credible, correct? Sure, absolutely. And so how do you define it? So that goes back to it. It looks like the trial court didn't know how to define his working hours either. Right. And so instead of defining it as hours on the clock, it defined it as activity. Activity of using heavy equipment. But is that activity a broad prohibition, in your argument, or restriction? No. I think it just triggers the right. So if, for example, a parent is able to work remotely from home, and the court says, sure, no problem, but if you are called into the office, then you should offer time to the other parent. I think that's the corollary. I think that's a very similar situation, because then the parent is truly available, rather than the children sitting in a piece of equipment in this restricted space without access to a restroom for prolonged periods of time. Having responded, I think I heard opposing counsel say that there was no petition to modify under 610. This case is before us following a petition for contempt and to enforce parenting time.  If there's no petition to modify, how do you get to the point where the judge is modifying? Sure. So kind of two points on that. So first, under Section 607.5, the statute does authorize, the legislature is authorized to try in court to impose additional terms and conditions consistent with the existing parenting plan. To the extent that the court may find that the adoption of its own interpretation was not consistent with the existing parenting plan. I further argue that under Section 610.5, a minor modification can be made without a showing of substantial change in circumstance. So if this clarification that the court issued, if this clarification is considered not consistent with the prior existing parenting plan, then I would say it falls under 610.5e, subsection 2, which allows a minor modification without showing no substantial change. So I believe that that statutory authority does exist there with respect to that. And, Your Honor, I also would like to note that, again, to try to characterize this as a restriction is an attempt to hold this to a higher legal standard than is appropriate. Let me interrupt you there, though. Why was there testimony then about the dangerousness of the farm equipment if there wasn't an endangerment standard? I mean, what was the purpose of that testimony? Sure. So, Your Honor, when construing the ambiguity in the agreement, the court had to consider the facts and circumstances at the time that the agreement was negotiated and agreed to. And so that was very much one of the considerations for Mother, that these are very long hours during those specific busy seasons when Father is very busy. And based on her knowledge, being in a farming family, and also from their time together as a family unit, she knew you are tired, people are exhausted. It is a very long period of time, and there are dangers that exist. I am satisfied that our children are sufficiently cared for. They're just with me during that time. But we can always coordinate or work out, if you'd like the kids to come and see you at the farm, I can bring them to you. And there was testimony, uncontradictive testimony, that Mother had worked with Father to facilitate some of those times. But what we're dealing with is, because the hours are so variable, these potentially very long, potentially late hours that the children would be in Father's care or if Father's working very late the night prior, and then out in the field with the equipment, it's just such a variable activity that by using the activity as a reference point for when that right to provide care, that made the most sense under the circumstances. You characterize this as a minor modification or additional terms, but in paragraph 13 of your brief you call this a sanction. How do you square that up? Sure. If you look at section 607.5, specifically the statute just says, the court may impose sanctions as follows, and the first sanction is the imposition of additional terms and conditions. So I was just using the statutory language from the legislature. So they do describe that as a sanction. And it is the first sanction that the legislature listed when empowering trial courts to enforce parenting time orders. And I'll also note that even had the court not specifically adopted its interpretation, its interpretation was its interpretation. I mean, that would have been the law of the case. The trial court was simply clarifying to prevent conflict and to provide that clarity to the parties moving forward. And so I believe that the trial court's effort to clarify that ambiguity was certainly within the authority of section 607.5. I asked Mr. McDevitt, opposing counsel, about this, and maybe I don't recall with all the cases we had, but I thought I remembered somewhere in the record that Judge Hartwig expressed frustration with father that he wasn't honoring the right of first refusal or wasn't giving mother time when he was working the diary. Yeah, you're correct, Your Honor. And there were specifically exhibits showing where the father had been operating a planter during his parenting time and the children were with other people. And father took the position that, well, that's not child care. That's not someone else providing care. Well, he wasn't directly supervising the children, but in his testimony he was adamant that he was caring for the children although someone else was watching. So that was the big point of conflict during the hearing as well, and I think that that probably fed into some of the frustration. He expressed frustration, but did he make a finding of any kind? He did find by preponderance of the evidence that father had not complied with the parenting plan. All right. Thank you. Any other questions? Do you have any additional comments? Probably after I step down I'll think of some. No, Your Honor, I would just ask that the Court affirm the trial court's decision. Thank you, Your Honor. All right. Thank you, Ms. Chapman. Mr. David. Thank you, Your Honor. I think the Court's questions have lasered in on the issue and why this was an abuse of discretion because this is about time. This is not about the activity. The testimony in resolving this ambiguity and resolving the ambiguity of the parties' agreement here, you do have to look at the intention of the parties, including the testimony herein, in which there are two things that are important. The petitioner testified that she was okay with the children riding in heavy equipment. She just didn't want them in the equipment all day. That's her precise testimony. And the other piece of evidence that indicates what the intention of the parties was, there were multiple times when she took the children to the field to ride in the heavy equipment. So the complaint was not about heavy equipment. It was about time. It was about how long, the duration. The fact that she relinquishes her time to father doesn't really get to the issue of enforcement of this parenting provision. That's what the court was faced with. I agree. But the trigger being heavy equipment as a blanket prohibition, I think is not consistent with the evidence or the intent of the parties. It was obviously about time. The parties didn't put in a time. They didn't put in 5 o'clock. I agree. It was unartfully, perhaps, or it wasn't specific enough. Be careful if you did it. Honestly, I don't know. But I go back to the way I interpreted it, the way I think the most logical interpretation of it is, is it relates to time. Because it says, during these periods, or it's additional within an hour. Everybody knows that. Everybody in the Midwest knows that that happens during planting harvest season. But that could be so many different things. I agree. But the following sentence, during those periods, I say the most logical interpretation of that is, what are additional extended hours? And that's the issue. But by using a blanket prohibition against heavy equipment, I would also suggest that any imposition of additional terms and conditions has to be in the best interest of the children. The order here specifically prohibits it is clearly contrary to the best interest of the children. And I'll leave you with one comment. Why is that? Because they have always participated their entire lives by the admissions of both parties, that it is beneficial to the children to be involved in the farming operation, including riding the combine. What is preventing them from being involved in the farming operation? In general, they can be involved in the farming operation. What they cannot do is ride on heavy equipment. During planting and harvesting season. Correct. The only time the combine is used. During harvest season. So this child can't sit next to his dad in the combine and harvest corn. Do you think it's in the best interest of a child to ride in a combine with another child where there's one seat and no bathroom? No, I agree. That should not happen. And I agree that... We don't have that defined in this plan. We don't. And I think that's where, to the court's question earlier, what additional terms or conditions could be imposed that would be consistent with the best interest of the children? I'm suggesting it's not a blanket prohibition, but there could have been, and I suggested to Judge Hartrick, that there could have been terms and conditions that would protect the children and address those concerns. Time, duration, time of day, you know, the number of hours per week. Only one kid in the combine at the same, you know, at one time. I think those are reasonable terms and conditions. I may argue that that would be a restriction, but it's not as clearly a restriction as just it's not happening. To be clear, though, a restriction requires a finding of serious endangerment, too. Correct. And we've got no finding of that here. No, we do not. So, again, I was thinking about what this really means. It's not just a combine or a tractor. This child can't ride a tractor with his dad during planting and harvest season, nor can Harper. It's a blanket prohibition. So on a day when it's raining and Jeremy wants to take grain to the elevator, neither of his children can ride in the semi with him. So I would suggest that that is a restriction without the requisite finding of serious endangerment. I have two questions, hopefully one quick and one sort of quick. Was there testimony, I don't want to call this on the record, but was there testimony about the seats in these combines? Because I grew up on a farm and I had a small tractor with no cab, and you could fall off easily. Modern equipment has bench seats sometimes. Sometimes it has a single seat. Was there evidence whether this is a bench seat or a single seat? There was. There was testimony about the seat. There were complaints, legitimate complaints, about having both children, one child sitting on the floor and one child sitting in, I think it was referred to as a buddy seat or something like that. So there was evidence about that? There was evidence about that. I have a question. The Supreme Court has rules and the Second Circuit, where this came from, has rules about mediation. Before you get your day in court, you have to go through mediation. Did the parties go through mediation in this proceeding because it was a contempt proceeding? Did it go directly to hearing? I believe it did. My recollection is that they did go to mediation on this issue. I think it was early on after the filing of the petition. So that was my question. If this case was sent back, not saying that it is or should be, but if it was sent back, does it go to mediation for the parties to try and flesh out what they meant, or does it go back to the judge to determine what they meant? I think it can be remanded for the court to determine what is an appropriate term and condition given the evidence that's here and the testimony that it's not a blanket prohibition that any party believes is in the best interest of the children. But yet that's what he did. I'm not so sure you're telling us the proper relief that you want. What relief do you want? The reversal of this order. And based on what? That it's a restriction and that there was no finding?  I'm answering the court's question. I suppose it could be remanded for them to flesh it out. But the relief we're requesting is the reversal of this order for that precise reason. For that reason. Yes. This was a restriction. Two reasons. One, it was a restriction, and two, it's under 607.5. This, what I call a restriction, whatever you want to call it, term and condition, is not consistent with the prior order. Those are the two reasons why it should be simply reversed. Okay. I see your time is up. I appreciate all of your arguments here today. Thank you, Your Honor. I'm going to take this matter under advisement. We will issue an order in due course. Thank you. Thank you.